587 P.2d 246

STATE of Arizona, Appellee,

v.

Danny Warren TRUJILLO, Appellant.

No. 3998.

Supreme Court of Arizona,
En Banc.

Nov. 7, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen., by Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Donald E. Wolfram, Phoenix, for appellant.

HAYS, Justice.

Appellant Danny Warren Trujillo was convicted by a jury of assault with a deadly weapon, in violation of A.R.S. § 13–249(B).[1] After the verdict, appellant admitted two earlier felony convictions which had been alleged against him by the state. He was sentenced to not less than thirty years, nor more than life. He appeals judgment and sentence. We have jurisdiction pursuant to the Arizona Constitution, article 6, § 5(6), and A.R.S. § 13–1711.

Viewing the evidence in favor of the verdict, the following is the summary of events:

On January 15, 1977, at approximately 11:30 p. m., Phoenix Police Department Officer Thomas Janssen, hereinafter "victim," stopped a 1962 white Chevrolet with the license plate number VAS 648. As is customary, before leaving his vehicle, the victim radioed the police dispatcher with his location and the license number of the stopped vehicle. Shortly thereafter, Officer Janssen was found lying on the ground next to his vehicle, his head bleeding pro-

---

1. There being no question that the weapon used in the assault was a gun, there can be no question that this is the correct statute for sentencing purposes. *See State v. Gordon*, 120 Ariz. 172, 584 P.2d 1163 (1978).

fusely from a gunshot wound. Lying underneath him, and completely unconscious, was a Caucasian male with long, light-colored hair, named Melvin Askren.

Among certain witnesses who arrived at the scene as the assailant was fleeing were Mr. and Mrs. Johnny Rodriguez. Almost immediately thereafter, other police officers began to arrive. Mary and Johnny Rodriguez described, as best they could, the figure they observed standing over the victim and the car in which he fled thereafter. In addition to their certainty regarding the make and color of the vehicle, the Rodriguez couple told the police that the car was distinctly marked with spots where the paint had been sanded off.

Approximately one hour after the assault, appellant and his girlfriend, Cecelia Hoover, were stopped in a 1962 white Chevrolet, with primer spots on it, bearing license plate number VAS 648. Appellant was arrested and transported, with the vehicle, to the Phoenix Police Department building.

At the station, Mr. and Mrs. Rodriguez were shown the vehicle in which appellant and Hoover were arrested. Mary Rodriguez identified it immediately and definitely as the one she had seen the assailant run to and flee in. She was then taken to a one-man showup with appellant. Asking the officers to have appellant turn around and to dim the lights on him, Mary Rodriguez told the police that she could identify appellant from the back, as she had never really seen his face. In this manner, she did in fact identify appellant.

Appellant was questioned but consistently denied guilt. When asked, however, who could have shot the victim, he replied, "Maybe a nigger jumped out of the bushes and shot him." The defense at trial was, in fact, that a third, but unidentified black passenger in the vehicle did the shooting.

Prior to trial, defense counsel moved *in limine* to prevent Mary Rodriguez from making an in-court identification. A *Des-*

*sureault*[2] hearing was conducted and the trial judge subsequently denied the motion.

Five issues are raised on appeal. We will deal with them in the order presented in the briefs.

### OMISSION OF RAJI, CRIMINAL STANDARD 13

■ First, appellant argues that Recommended Arizona Jury Instructions, Criminal Standard 13, should have been given by the trial court. The instruction deals with accomplice testimony.

We note that defense counsel never requested the instruction, but even if he had, the judge would have been quite correct in refusing it. The 1976 legislature repealed in an emergency measure, A.R.S. § 13–136, requiring corroboration of accomplice testimony. Laws 1976, chapter 116, § 1. Appellant was charged with a crime committed in January of 1977. Clearly, he was not entitled to RAJI, Criminal Standard 13.

### FAILURE TO SUPPRESS THE IN–COURT IDENTIFICATION

■ A one-man showup is permitted only under limited circumstances. *See State v. Gastelo*, 111 Ariz. 459, 532 P.2d 521 (1975). In this case, the showup occurred some four hours after the incident, at the police station, after the witness was aware that the vehicle she had earlier described and identified was parked on or near the police department's property. Under these circumstances this procedure was at least arguably suggestive.

■ However, a suggestive showup does not always preclude the use of the identification at trial if it can be shown, under *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), that the identification was otherwise reliable. *State v. Williams*, 113 Ariz. 14, 545 P.2d 938 (1976). The following factors should be considered:

1) opportunity of witness to view suspect;

---

2. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

2) degree of attention of witness;

3) accuracy of witness' prior description;

4) level of witness' certainty at confrontation;

5) length of time between crime and confrontation.

█ In the instant case, the witness had a very short time in which to view the appellant at the scene of the crime. It was only a matter of seconds. However, she testified that her attention was immediately drawn to the parked patrol car and Chevrolet because they were both empty and the police vehicle did not have its flashing lights on. Her description of the assailant was that he was the same height and weight as her husband, that he was wearing dark pants and a checkered shirt, and his dark hair was not long. These observations were, indeed, extremely accurate. Her one uncertain feeling was appellant's race. She initially identified appellant as a Negro, but qualified that to the police by clearly indicating her uncertainty as to the assailant's race. Furthermore, she was absolutely certain, when she observed appellant from the back, at the showup, that he was the man she saw fleeing. Finally, there was only a four-hour delay between the incident and the confrontation.

Under these circumstances, we are of the opinion the trial court did not err in allowing the in-court identification. *State v. Williams, supra.* Furthermore, throughout her testimony at trial, on direct and cross-examination, Mary Rodriguez made it clear that she could not identify appellant's facial features and that her identification of him stemmed from her recognition of his stature, clothing and hair length as observed from his back. The jury, thus, could weigh her testimony accordingly.

### ADMISSION OF EXHIBITS 46A, 49 AND 50

In order to prove appellant owned the 1962 Chevrolet in which he was arrested, the state called a "questioned documents examiner," William Flynn, to identify appellant's handwriting on certain documents. Exhibit 46 was the booking record arrestees sign when first arrested and incarcerated. Exhibit 46A was a copy of the signature only. Exhibit 49 was a copy of appellant's application for an Arizona driver's license. Exhibit 50 contained a certified abstract of appellant's driving record (showing no convictions) and another copy of his application for a license. Mr. Flynn compared the signature on the booking record and the signature on the application and determined they were the same. Defense counsel objected to the admission of 46A because the signature had been taken in violation of the fifth amendment to the United States Constitution and 17 A.R.S., Rules of Criminal Procedure rule 15.2(a)(7). The latter requires a defendant to give a specimen of his handwriting upon the written request of the prosecution. Appellant renews these arguments on appeal.

█ This issue is specious. Since the United States Supreme Court's decision in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and, more specifically, its decision in *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), it has been crystal clear that the fifth amendment is not violated by the taking of a defendant's handwriting specimen. Furthermore, rule 15.2(a)(7) is merely a means by which the prosecutor may obtain such a specimen if he needs it for some purpose related to the charged offense. If the state already has such a specimen and can prove it is the defendant's, as it did here by the testimony of the booking officer, there is no need for it to use rule 15.2(a).

█ Defense counsel's objection to Exhibits 49 and 50 was that they contained "yes" answers to the following questions on the application: (1) Has your license ever been refused, suspended or revoked? (2) Have you been addicted to drugs within the last three years? To accommodate the objection, the trial judge literally excised the questions by cutting them out of the license with a scissors. The defense still objected, arguing the jury, who may have their own licenses, could still recognize and remember

the prejudicial portion excised. The trial judge disagreed, and so do we. The jurors were instructed to determine the facts only from the evidence produced in court and not to guess about any fact. No one can presume jurors will betray their trust and ignore the court's instructions. *State v. Parker,* 116 Ariz. 3, 567 P.2d 319 (1977). There being no evidence they did, we affirm the trial judge's actions in this matter.

## MOTION FOR MISTRIAL

During the testimony of state's witness Hoover, the prosecutor elicited certain remarks regarding the appellant's use and purchase of marijuana on the evening of the crime. The defense objected, arguing that it was merely an attempt to show other bad acts on the part of the appellant.

■ Although evidence tending to show a defendant committed crimes other than that for which he is being tried is generally inadmissible, it is admissible when it is so blended or connected with the offense being tried that proof of one incidentally involves the other. *State v. Ferguson,* 120 Ariz. 345, 586 P.2d 190 (1978); *State v. Myers,* 117 Ariz. 79, 570 P.2d 1252 (1977).

■ In the instant case, Melvin Askren testified that he and the appellant left the apartment of Askren's girlfriend together, in appellant's car, in order to purchase some marijuana. He further testified that his physical struggle with Officer Janssen was the result of his attempt to swallow the baggie of marijuana the two had purchased. It was during this struggle, of course, that appellant's opportunity to shoot the unwary officer arose. We think the subject of marijuana use and purchase was significantly involved in the total picture, so that the admission of references to it by any witness was not erroneous.

## PROSECUTORIAL MISCONDUCT

Appellant alleges four instances of prosecutorial misconduct which, he argues, cumulatively deprived appellant of a fair trial.

■ First, he argues that, although defense counsel frequently objected and was sustained, the prosecutor continued to ask questions of the victim, even though the prosecutor knew the victim had total amnesia regarding the incident and could not answer the questions. This was done, it is argued, only to display the pathetic physical condition of the victim and to arouse the jury's sympathy for him.

The prosecutor had been advised that there was a possibility the victim's memory might be refreshed by certain questions. He attempted to do so, with frequent objections by defense counsel. Finally, in chambers, the trial court advised the prosecutor to ask only "two or three more general questions and then if there is no sign or reviving . . . this memory . . . go to what he does remember." That is precisely what the prosecutor did. If, during the examination of the victim, jury sympathy was evoked, it was incidental to the state's right to produce evidence of the crime from one of only three people present during the criminal event.

Secondly, appellant complains again about the eliciting of information from Cecelia Hoover regarding marijuana. Having dealt with this issue earlier, we will simply say that this examination did not amount to misconduct.

■ Thirdly, appellant points to the misconduct of the prosecutor in offering into evidence the complete written report of William Flynn, the "questioned documents examiner." He urges the evidence was repetitive and self-serving, and served no legitimate purpose in the trial.

This, too, is a specious argument. Appellant's brief admits the expert testified concerning the entire contents of the report. There was nothing in the report which was inadmissible at trial. Although unnecessary, the prosecutor's action hardly amounted to reversible misconduct.

Fourthly, appellant argues that the failure to disclose certain *Brady*[3] material showed the prosecutor's attitude throughout the trial as vindictive and resistant to obedience, to both the Rules of Criminal Procedure and the trial court's orders.

The "*Brady* material" referred to was a rumor, conveyed to the prosecutor by appellant's girlfriend, that Melvin Askren had committed a robbery but allowed another man to "take the fall" for him. The rumor was checked out, at the prosecutor's request, and found to be groundless. However, arguing this showed Askren's criminal propensity and violent character, it is urged that the state should have revealed it to the defense, so further investigation could have been made and a more effective cross-examination of Askren performed. As it was, the information was revealed to the defense the Friday before trial testimony actually began.

Although the prosecution should probably have revealed the information pursuant to Rule 15.1(a)(7) and *Brady,* as the appellant might have seen fit to approach his defense differently, we think two important facts mitigate this failure. First, defense counsel already knew of Melvin Askren's previous involvement in a barroom fight which resulted in a homicide. Thus, Askren's "criminal propensity" was already known. Secondly, defense counsel requested no continuance before starting the trial, to make further inquiry into the rumor. Furthermore, Askren had never been charged in either of these incidents and it is highly unlikely that the information would have been at all helpful to defense counsel for cross-examination. The use of character evidence to impeach a witness may not extend to the showing of a specific prior bad act for which the person was not convicted of a felony. *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976).[4]

Appellant was allowed by the Court to file a supplementary brief, *in propria perso-na,* raising one last issue. Essentially, the appellant complains that the prosecutor condoned perjury by one of the state's witnesses.

Danny Lee Taylor was in the Maricopa County Jail contemporaneously with appellant. He testified that on or about February 8 or 9 of 1977, he was in a holding tank with appellant, awaiting a court appearance. He testified further that appellant confessed to the shooting of Officer Janssen, and that another jail inmate, Webster Lee Johnson, was with them when this occurred and also heard the confession. During the defense case-in-chief, court records were presented which convincingly showed appellant and Taylor were never in a holding area together. Webster Johnson testified that although he and appellant had once been together in a holding area in February or March, Taylor was never present. In fact, Taylor was a cell-mate of Johnson and probably never left his cell the day Johnson and appellant met. Johnson also testified that Taylor's reputation at the jail was as a "snitch" (police informer), looking for ways to make deals with authorities and reduce his own prison sentence. Indeed, on cross-examination, Taylor admitted a deal had been made with the state, for his incriminating testimony, which did reduce his prison time.

In light of the highly effective attack on Taylor's credibility, there is little likelihood the jury relied on his testimony at all. It was, of course, for them to determine what weight to give it. If the prosecutor was involved in the subornation of perjury, it is a matter for other proceedings. Should proof of such activity ever be made, appellant will have sufficient remedy by way of 17 A.R.S. Rules of Criminal Procedure, rule 32.

For purposes of this appeal, it is our feeling the record does not support such a charge and therefore we rely, as we always must, on the jury's decision. It is supported amply by other evidence.

---

**3.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**4.** *See also* Arizona Rules of Evidence, rule 608, which is consistent with this rule, although not yet in effect at the time of this trial.

The judgment of conviction and the sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.