Henry WILLIS, Jr., Appellee,

v.

Samuel GARRISON, Warden; and, Rufus Edmisten, Attorney General of North Carolina, Appellants.

No. 79–6831.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1980.

Decided July 1, 1980.

As Amended Aug. 4, 1980.

Thomas J. Ziko, Associate Atty. Gen., Raleigh, N. C., Richard N. League, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellants.

William George Pappas, Raleigh, N. C. (Sanford, Adams, McCullough & Beard, Raleigh, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

FIELD, Senior Circuit Judge:

Henry Willis, Jr., together with Tyrone Williams, was twice tried for armed robbery in the Superior Court of Mecklenberg County, North Carolina. The first trial which was held in 1973 resulted in a hung

jury. In the second trial in 1974 Willis was found guilty and sentenced to thirty years in prison. In each trial the question was raised in regard to the pre-trial identification of Willis by the victim of the robbery, Wilbert Brown. On each occasion, after an extensive *voir dire*, the state court permitted the identification testimony to go to the jury over the objection of Willis' counsel.

Willis appealed his conviction to the Court of Appeals of North Carolina which found no error and affirmed, *State v. Willis*, 22 N.C.App. 465, 206 S.E.2d 729 (1974). Thereafter, Willis sought post-conviction review in the state court, contending, *inter alia*, that he had been subjected to an unconstitutional pre-trial identification procedure. Relief was denied and a petition for a writ of certiorari to the Court of Appeals of North Carolina was also denied.

On November 21, 1978, Willis filed a *pro se* petition for habeas corpus relief in the United States District Court for the Western District of North Carolina, alleging that (1) his trial counsel was ineffective; (2) the state had failed to disclose exculpatory material; and (3) he had been the victim of an unlawfully suggestive pre-trial identification procedure. The district court granted relief based upon the identification issue, and North Carolina has appealed.

The facts concerning the robbery and bearing upon the identification issue are largely undisputed. In the early morning of April 7, 1973, Wilbert Brown was walking along Barringer Drive in Charlotte when he was passed by an automobile which he described as being a '70 or '71 Maverick or Pinto, maroon or red in color. There were three males and two females in the car. The car stopped and two of the males got out and started walking in the same direction as Brown on the opposite side of the street. The two individuals crossed the street and intercepted Brown, each holding a handgun. While one of the robbers stood in front of Brown the other moved behind him and extracted his wallet. Brown had ample opportunity to view the first man's face but got only a glimpse of his second assailant. As the second thief left the robbery, however, he stopped under a street light approximately one hundred feet away and turned, warning Brown not to move or call for help. The thief remained under the street light long enough for Brown to observe his general appearance, including his height and weight, as well as his clothes and complexion. The distance, together with the poor light, prevented Brown from discerning any of the facial features of the robber other than his complexion.

Shortly after the robbery Brown gave the police a description of the thieves and the car in which he had seen them. He described the individual who faced him during the confrontation as wearing dark pants, a black jacket and a cap. He estimated his height at 5'7" and his weight at approximately 195 pounds. The individual who stood behind him and who he observed under the street light was described as being approximately 6 feet tall, weighing about 165 pounds, and wearing a black jacket, dark pants and a broad-brimmed hat. In addition to the description of these two men, Brown told the police that they had been riding in a red or maroon colored Pinto or Maverick, a 1970 or 1971 model, in which there was a third black male and two females.

A short time thereafter Charlotte Police Officer Eberhardt observed a 1970 reddish, copper-colored Maverick on Greenleaf Avenue with a young black male in the driver's seat. A black female was also in the front seat and Willis and Williams were in the back seat. Another black female was standing outside the car. The officer interrogated the young man in the driver's seat and during the interrogation the two females left the area. Eberhardt asked the three males to step out of the car, and when they did so he observed a black hat with a broad brim on the back seat of the Maverick from under which the handle of a 22 calibre pistol was protruding. While talking with these individuals, a report came over the officer's radio concerning the armed robbery and giving the description of the two suspects involved. In the opinion of

Officer Eberhardt, Williams and Willis fit the description, and since he had already seen the hat and revolver, Eberhardt advised the three men that he was arresting them for investigation of armed robbery and directed them to get in the police car. Eberhardt then advised another Charlotte police officer that he had two suspects in custody and they arranged to meet at a gasoline station in the vicinity of Barringer Drive. Before leaving for the station Eberhardt took the hat and a second revolver which he had found in the Maverick and carried them with him in the police car. Two other officers picked up Brown and brought him to the designated station.

The first individual to get out of the patrol car was the young male who had been in the driver's seat of the Maverick and Brown immediately stated that he was not one of the robbers. The next individual to step out of the patrol car was Willis, and Brown was initially unable to identify him. He did, however, ask the police whether Willis had a black jacket and hat. During the trip from the scene of the arrest the suspects had shed their outer clothing and an officer found the jacket and hat in the back seat of the police car. When Willis donned the hat and coat, Brown positively identified him as the man who was at his back during the robbery and who had stood beneath the street light and warned him not to move or call anyone. The third individual to emerge from the patrol car was Williams and Brown immediately recognized him as the man who had faced him during the course of the robbery.

 The district court recognized that under *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the key in determining the admissibility of identification testimony is reliability, and that reliability is to be gauged by the factors set out in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972). The district judge concluded, however, that these factors need not concern him since Brown was unable to identify Willis' facial characteristics, and was able to identify him only by reason of his height, skin complex-

ion and clothing. The judge observed that "any connection between that description and Willis was completely contributed to by the confrontation and dressage arranged by the police." It would appear that the district judge was of the opinion that an identification based upon anything less than the facial characteristics of the subject was constitutionally impermissible. We disagree.

We had occasion to deal with the subject of pre-trial show-up identifications in *Stanley v. Cox*, 486 F.2d 48 (4th Cir. 1973), *cert. denied* 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1974), and made the following observations:

The real issue in all three cases turns on whether the one-on-one pre-trial identifications of the petitioner were violative of due process. Although pre-trial show-up identifications have been criticized under some circumstances, as the petitioner contends, there is no *per se* rule that they are violative of constitutional rights. There are, however, very definite due process standards, which such show-ups should meet, if they are to avoid a finding of constitutional invalidity. A show-up identification meets those due process standards, as established under the Fifth and Fourteenth Amendments if, taking into consideration the "totality of circumstances" surrounding it, it is found to be not "so necessarily suggestive and conducive to irreparable mistaken identification" as to deny the defendant fundamental fairness. One of the show-up situations consistently found to satisfy these due process standards and not be a case of "undue suggestiveness" is the confrontation had promptly after the crime. Such a confrontation has been stated to have "great merit." Thus, in *United States v. Wilson* (1970) 140 U.S.App.D.C. 220, 435 F.2d 403, 404–405, the Court said: (Footnotes omitted)

"Though suggestiveness is inherent in the situation, [a prompt showup identification] we think the case is not one of undue suggestiveness, in view of the countervailing considerations, that prompt, on-the-scene identifications are

likely to promote fairness, by enhancing reliability of the identifications, and permit expeditious release of innocent subjects." (Footnote omitted) 486 F.2d, at 50–51. We went on to conclude that:

in weighing the several relevant factors suggested by *Neil v. Biggers*, Courts will recognize that "[D]ue process does not require that every pretrial identification of a witness must be conducted under laboratory conditions of an approved lineup" or show-up, that every case must be resolved on its own unique facts, and that, where after a weighing of all relevant facts surrounding the identification, including the time and place of confrontation, it is concluded that the show-up was not "unnecessarily suggestive", testimony of the show-up identification is admissible. (Footnotes omitted)

*Id.* at 52–53.

■ It is necessary, then, that we apply the *Biggers* factors to this case:

1. *The Opportunity to View.*—Concededly, Brown was unable to discern Willis' facial characteristics as he stood under the street light, but he did have ample opportunity to observe his height, approximate weight, clothing and facial complexion.

2. *The Degree of Attention.*—As he viewed his assailant, Brown was not in the posture of a casual or passing observer, but was looking directly at the man who had just participated in the robbery and, undoubtedly, paid scrupulous attention to the individual who was ordering him not to move or call for help.

3. *Accuracy of the Description.*—Brown's description which was given to the police shortly after the robbery was highly accurate. It included Willis' race, height, approximate weight, complexion, and clothing. Additionally, he gave an accurate description of the automobile in which Willis had been a passenger just prior to the robbery as well as the other occupants of the vehicle. All of this was validated when officer Eberhardt observed the Maverick automobile on Greenleaf Avenue within a short time after the robbery. The vehicle and its occupants matched the description given by Brown to the police and the discovery of the two handguns in the vehicle supported the inference that at least some of the occupants had participated in the armed robbery.

4. *The Witness' Level of Certainty.*—Brown promptly rejected the first individual who left the police car as a participant in the robbery. However, he quickly and dramatically recognized Williams,[1] and he positively identified Willis after the latter had put on the jacket and hat which he was wearing at the time of the robbery.

5. *The Time Between the Crime and the Confrontation.*—As we have noted, Brown gave the description of his assailants to the police within minutes after the robbery, and this in itself gave added validity to Brown's identification. It is true, of course, that Brown was unable to identify Willis based upon the latter's facial characteristics,[2] but height, weight and clothing are acceptable elements of identification, and this is especially true when the confrontation takes place shortly after the crime when it may

---

1. It is quite apparent that there was no doubt in Brown's mind that Williams was one of the robbers. In the 1973 trial Brown testified as follows:

Q OK. What happened then?
A Tyrone Wiliams got out of the car next.
Q OK.
A I recognized him right off hand.
Q What did you do when Tyrone Williams got out of the car?
A I hit him.
THE COURT: You did what?
A I hit him.
THE COURT: You hit him?
A Yes, I did.

Q What, if anything, did you say to him?
A I told him he had no business robbing me, is what I said to him.
App., at 15.

2. Identifications have been held proper in cases where the robber was wearing a mask or scarf over his face at the time of the crime and the witness has been able to identify the suspect only after the suspect's face has been partially covered in a similar manner. *See Souza v. Howard*, 488 F.2d 462, 465 (1 Cir. 1973); *United States v. Gaines*, 450 F.2d 186, 195 (3 Cir. 1971).

reasonably be inferred that the suspect is dressed as he was at the time of the robbery. While the officers procured the items of clothing from the police car where they had been discarded by the suspects, we think it is reasonable to assume that they were, in fact, the jacket and hat worn by Willis at the time of the robbery. This is a far cry from the situation where police officers have placed incriminating clothing on an individual to influence an identification. *See, e.g., United States v. Kemper*, 433 F.2d 1153, 1155 (D.C. Cir. 1970).

█ Based upon our appraisal of the totality of the circumstances in this case, we are unwilling to say that Brown's confrontation with Willis "was so unnecessarily suggestive and conducive to irreparable identification that [Willis] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The late Judge Leventhal made the following perceptive observation in *Clemons v. United States*, 408 F.2d 1230, 1251 (D.C. Cir. 1968):

> In essence what the *Stovall* due process right protects is an evidentiary interest.
>
> *    *    *    *    *    *
>
> It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness—an obvious example being the testimony of witnesses with a bias. While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the "integrity"—of the adversary process.
>
> Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi. (Footnotes omitted)

This observation was echoed in *Manson v. Brathwaite*, 432 U.S. 98, *supra*, at 116, 97 S.Ct. 2243, 2254.

> Short of that point, such evidence is for the jury to weigh. We are content to

rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

In our opinion, the submission of Brown's identification testimony to the jury was constitutionally permissible and, accordingly, it was error for the district court to grant the petition for habeas corpus relief. The judgment of the district court is reversed and the case remanded with instructions to consider and dispose of the two alternative claims alleged in the petition.

*REMANDED WITH INSTRUCTIONS.*