NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Respondent*,

*v.*

CHARLIE RUSSELL MARTIN, *Petitioner*.

No. 1 CA-CR 21-0559 PRPC
FILED 7-26-2022

---

Appeal from the Superior Court in Maricopa County
No. CR2014-105544-001
No. CR2016-112365-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**REVIEW GRANTED; RELIEF DENIED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Faith C. Klepper
*Counsel for Respondent*

Ballecer & Segal LLP, Phoenix
By Natalee E. Segal
*Counsel for Petitioner*

_____

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

_____

**M c M U R D I E**, Judge:

**¶1**        Charlie Russell Martin petitions this court to review the summary dismissal of his petition for post-conviction relief ("PCR"). We have considered the petition for review and, for the reasons stated, grant review but deny relief.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        In December 2015, Brittany Austin was stopped at a red light when Martin drove into the back of her van, forcing it into the car in front of her. Austin checked on her children in the back seat, then exited the van and checked on the car's driver in front of her. She then turned and saw Martin exit his vehicle, look at her, and take off on foot. Another person, Christian Sevilla, witnessed the accident from a nearby parking lot and watched Martin exit his vehicle and leave the scene.

**¶3**        When police officers arrived, Austin provided them with a description of Martin. Based on her description, the officers located Martin nearby and eventually handcuffed him. One officer observed that Martin smelled of alcohol, slurred his speech, and had "a very unsteady gait."

**¶4**        Several officers remained near Martin while one officer brought Sevilla over for identification. Sevilla identified Martin as the driver. The officer then escorted Sevilla away from the scene and returned with Austin. The officer clarified for Austin that the man in handcuffs "may or may not be the person," then asked her if that was "the person [she] observed leaving the accident." She responded in the affirmative twice before confirming that she was "100% positive." She also confirmed that she saw "him actually . . . get out of the car." When asked if she needed to

_____

[1]     We view the facts in the light most favorable to upholding the verdict. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

get a better view of the man or if she was confident in her identification, she replied, "No, that's him for sure."

¶5　　　　After the two identifications, the police arrested Martin for driving under the influence ("DUI") and leaving the scene of an accident. They transported him to the police station to draw Martin's blood and the analysis determined his blood alcohol concentration was .256.

¶6　　　　The State charged Martin with two counts of Aggravated DUI, both class 4 felonies. The case proceeded to trial and ended with a hung jury. The State then retried Martin. During the retrial, Austin testified that she saw a man alone in the car driving behind her before the accident. She testified that, after the accident, she saw the same man sitting in his car before he stepped out and left the scene. She also testified that she identified the driver at the scene with the police. She then identified the driver in court as Martin.

¶7　　　　Sevilla testified that he saw the accident from a nearby parking lot. He testified that he was facing the driver's side of the vehicle when he saw a car rear-end a van at a red light, and the man driving the car exited his vehicle and began walking away. He added that he only saw one person exit the car. He testified that he identified the car's driver to police. The jury viewed body-camera footage of the witness identifications.

¶8　　　　In his defense, Martin argued he was not the vehicle's driver. He testified that, on the day of the accident, his sister dropped him off at a bar, where he drank liquor and beer. He claimed a woman named Kiersten, who he had been seeing for a few weeks, borrowed his sister's car and drove to the bar to meet him. He testified that Kiersten later drove them to a restaurant, where they "had a couple more drinks." He stated that after they left the restaurant, Kiersten got into the accident.

¶9　　　　Martin testified that just after the accident, Kiersten exited the vehicle and fled. He claimed the passenger-side door would not open, so he slid over the console, exited the car through the driver-side door, and began searching the area for Kiersten while yelling out for her. He claimed that once the police located him, he denied being the driver and asked if they knew Kiersten's whereabouts. An officer, however, testified that Martin at first denied being involved in an accident and failed to mention anyone named Kiersten until after he was arrested and placed in the patrol car.

¶10　　　　During closing arguments, Martin conceded that he was drinking before the accident and exited the vehicle through the driver-side

door after the accident. But he emphasized that the only element in dispute was whether Martin was driving. He noted that only Austin testified that she saw Martin driving, and he argued that the witnesses' testimonies were not credible.

¶11          The jury ultimately found Martin guilty on both counts. He waived his right to a jury trial on aggravating circumstances and admitted he was on felony probation at the time of the offenses.[2] The court sentenced Martin to 11 years' imprisonment on each count, each running concurrently with the other. The court revoked Martin's felony probation and imposed a 2.5-year sentence for that offense, to run consecutively with the DUI sentences. Martin appealed, and we affirmed the convictions and sentences on direct appeal. *State v. Martin*, Nos. 1 CA-CR 17-0125 and 1 CA-CR 17-0126 (Consolidated), 2018 WL 4585959 (Ariz. App. Sept. 25, 2018).

¶12          Martin then filed a PCR petition, raising multiple claims of ineffective assistance of trial counsel. He claimed counsel failed to request a hearing or jury instruction under *State v. Dessureault*, 104 Ariz. 380 (1969). And he claimed counsel failed to object to the State's body-camera video admission and obtain an expert in eyewitness identification.

¶13          The superior court rejected the *Dessureault* claim, finding that it was "a reasonable trial strategy" to decline to request a *Dessureault* hearing "given the defendant testified . . . that he exited the car at issue, and it was his sister's car." The court added that "it is a reasonable trial strategy when one says they were at a location not to challenge identification of them at the location." The court also rejected the body-camera claim, finding that the video was "properly introduced as relevant to the issues of impairment, identification, and for the jury to compare to the defendant's statements made at trial." Finally, the court rejected the expert-witness claim, noting that calling an expert is not required in every case, and it would have had a minimal impact given Martin's testimony. Thus, the court dismissed the petition.

¶14          Martin petitioned this court for review. We have jurisdiction under A.R.S. § 13-4239(C) and Arizona Rule of Criminal Procedure 32.16(a)(1).

---

[2]        *See* Superior Court in Maricopa County No. CR2014-105544-001.

**DISCUSSION**

**¶15** We will not disturb the superior court's ruling on a PCR petition absent an abuse of discretion or error of law. *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012); *State v. Macias*, 249 Ariz. 335, 340, ¶ 16 (App. 2020). We review the court's legal conclusions *de novo*. *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017).

**¶16** Martin asserts that his trial counsel was ineffective. A defendant is constitutionally entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, a defendant must prove that counsel failed to meet an objective standard of reasonableness, which prejudiced the defendant. *Id.* at 687–88. A defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695–96. But "disagreements in trial strategy will not support a claim of ineffective assistance of counsel, provided the challenged conduct had some reasoned basis." *State v. Vickers*, 180 Ariz. 521, 526 (1994) (quoting *State v. Nirschel*, 155 Ariz. 206, 208 (1987)).

**¶17** On review, Martin asserts the superior court (1) misapplied the law when ruling on the *Dessureault* and body-camera claims of ineffective assistance in the PCR petition and (2) abused its discretion by denying the petition without a hearing.

**¶18** Martin contends the superior court improperly analyzed the *Dessureault* claim for ineffective assistance because it "fail[ed] to understand the identification issue as one of whether Martin was driving." He claims the one-on-one witness identifications conducted by police at the scene of the accident were unduly suggestive because the witnesses were shown Martin while he was handcuffed, sitting on the curb, and surrounded by police officers with police lights flashing. In his petition to the superior court, he asserted that reasonable counsel would have objected to this identification procedure under *Dessureault*, which safeguards against unduly suggestive pretrial identification procedures. *See* 104 Ariz. at 383–84.

**¶19** The superior court rejected this claim, finding that counsel's choice not to request a *Dessureault* hearing or jury instruction was a reasonable trial strategy because Martin's defense did not turn on his identification at the scene. We agree.

**¶20** Contrary to Martin's contention that the superior court "fail[ed] to understand the identification issue as one of whether Martin

was driving," the court understood that "the trial strategy was not to contest he was the person in the car, but that he was not the only person in the car and not the driver." Martin testified that he exited the vehicle after the accident. Thus, it would be illogical to challenge the witnesses' identifications of Martin as the man they saw exiting the vehicle. And Martin fails to show a reasonable probability that the trial outcome would have been different had a *Dessureault* hearing taken place or jury instruction given.

¶21 Martin also claims his counsel was ineffective for failing to challenge the admittance of the body-camera footage. He contends that it "was essentially the recorded version of the one-on-one identification at the scene of the accident" and argues that because "the identification itself was unduly suggestive, . . . showing it to the jury cannot be allowed." But as discussed, it was not unreasonable for counsel to decline to object to the identification itself. Likewise, it was not unreasonable to decline to object to the body-camera video. The video showed an officer asking Austin if the man the police had detained was "the person [she] observed leaving the accident," to which she answered in the affirmative. This evidence tracks Martin's admission that he exited the vehicle and walked away after the accident.

¶22 But Martin fails to prove that he would have prevailed in a *Dessureault* hearing. Even if a pretrial identification is unduly suggestive, it may still be admissible if it is otherwise reliable. *State v. Rojo-Valenzuela*, 235 Ariz. 617, 620, ¶ 9 (App. 2014). Thus, even if Martin could show that Sevilla's identification was unduly suggestive, he fails to show that the identification was unreliable, given that Sevilla witnessed the accident from a nearby parking lot and was quick to provide the police a description of the accident consistent with Austin's description. *See id.* ¶ 10 (Reliability factors "include the opportunity of the witness to view the criminal at the time of the crime, . . . the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (quoting *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). Thus, he has not shown a reasonable probability that he would have prevailed in a *Dessureault* hearing and then at trial.

¶23 Finally, Martin argues that he raised a colorable claim with material issues of fact, and thus the superior court erred by denying his petition without a hearing. Martin's claims do not turn on issues of fact and thus do not warrant an evidentiary hearing. The court did not abuse its discretion.

## CONCLUSION

¶24        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA