IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee*,

*v.*

SERGIO ARTURO ROJO-VALENZUELA,
*Appellant*.

No. CR-14-0364-PR
Filed July 9, 2015

Appeal from the Superior Court in Pima County
The Honorable Richard D. Nichols, Judge
The Honorable Scott Rash, Judge
No. CR20123276-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
235 Ariz. 617, 334 P.3d 1276 (2014)
**AFFIRMED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, David A. Simpson (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Isabel G. Garcia, Pima County Legal Defender, Scott A. Martin (argued), Assistant Legal Defender, Tucson, Attorneys for Sergio Arturo Rojo-Valenzuela

JUSTICE BERCH authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

_____

JUSTICE BERCH, opinion of the Court:

¶1        An inherently suggestive one-person show-up identification procedure implicates due process, but such an identification is nevertheless admissible at trial if it is sufficiently reliable. *State v. Williams*, 144 Ariz. 433, 439–40, 698 P.2d 678, 684–85 (1985). We must decide whether an appellate court may make a reliability determination in the first instance when the trial court has failed to do so. We conclude that although the trial court should make reliability findings before identification evidence is presented to a jury, an appellate court may make the reliability determination if the trial court record permits an informed analysis.

## I.  BACKGROUND

¶2        One evening in 2012, Tucson Police Officer Jared Wolfe responded to an emergency call concerning a man with a gun who was fleeing in a vehicle. He spotted the suspects' vehicle and gave chase. After a high-speed pursuit through a residential neighborhood, the suspects suddenly stopped their car and fled on foot. Wolfe followed one suspect in his patrol car, shining his spotlight on him as he jumped over a block wall. Wolfe testified at a pretrial suppression hearing that the suspect was "of thin build [and] short stature" and was wearing "a black long-sleeved shirt, black pants . . . [and] black and red shoes." Although Wolfe never saw the suspect's face, he testified that the suspect was approximately twenty to thirty feet away and that he was focused on the suspect and free from other distractions. He further testified that officers develop the ability to attend closely to physical details while on patrol.

¶3        Wolfe remained on the scene until the area was secured and then was taken to separately view two individuals. He could not identify the first suspect, but did positively identify the second suspect, Sergio Arturo Rojo-Valenzuela. He noted that Rojo-Valenzuela was wearing "the same pants and shoes that were worn by the individual that went over the wall" and that "[h]is physical build was exactly what [he] remembered . . . thin, short stature." Wolfe testified that he was ninety-nine percent certain that Rojo-Valenzuela was the man who went over the wall "based on

everything else minus the face."

**¶4** After holding a *Dessureault* hearing, the trial judge denied Rojo-Valenzuela's motion to suppress Wolfe's pretrial identification. *See State v. Dessureault*, 104 Ariz. 380, 384, 453 P.2d 951, 955 (1969) (holding that the trial court must conduct an evidentiary hearing when a pretrial identification is challenged). The judge did not make any findings regarding the procedure's suggestiveness or the identification's reliability because he did "not find[] this to be a typical identification that would be the subject of a suppression motion." On appeal, the State conceded that the show-up identification procedure was inherently suggestive and that the trial court erred in concluding that Wolfe's identification was not subject to a due process identification analysis. *State v. Rojo-Valenzuela*, 235 Ariz. 617, 619 ¶ 5, 334 P.3d 1276, 1278 (App. 2014). Relying on the pretrial hearing transcript, *see id.* at 619 ¶ 6, 334 P.3d at 1278, the court of appeals found by clear and convincing evidence that Wolfe's identification of Rojo-Valenzuela was reliable and therefore admissible, *id.* at 622 ¶ 16, 334 P.3d at 1281.

**¶5** We granted review to clarify whether an appellate court may decide the reliability of a suggestive identification in the first instance, an issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## II. DISCUSSION

**¶6** The Due Process Clause provides that no person may be deprived of liberty without due process. U.S. Const. amend. XIV, § 1. It has been interpreted to require "that any pretrial identification procedures [be] conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial." *State v. Lehr*, 201 Ariz. 509, 520 ¶ 46, 38 P.3d 1172, 1183 (2002), *supplemented by* 205 Ariz. 107, 67 P.3d 703 (2003). Whether an identification procedure is so suggestive that it violates a defendant's due process rights depends on the totality of the circumstances. *See Dessureault*, 104 Ariz. at 383, 453 P.2d at 954. In this case, however, we are not reviewing the ruling on the motion to suppress. The only issue before us is whether an appellate court may make the reliability determination in

the first instance, a legal determination that we review de novo. *See State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). Thus, we do not address the court of appeals' reliability analysis or conclusion.

**¶7** In *Dessureault*, we set forth the procedure for Arizona courts to follow when a defendant challenges a pretrial identification. 104 Ariz. at 383–84, 453 P.2d at 954–55. Under *Dessureault*, the prosecution must prove by clear and convincing evidence that the identification was not the product of an inherently suggestive procedure or, if the procedure was inherently suggestive, that the identification is nonetheless reliable. *Id.* at 384, 453 P.2d at 955.[1] Subsequent cases have clarified that an in-court identification resulting from an inherently suggestive initial identification is admissible unless the procedure created a "very substantial likelihood of . . . misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). That is, the court must determine whether the in-court identification is reliable despite the suggestiveness of the initial identification. *Lehr*, 201 Ariz. at 520 ¶ 46, 38 P.3d at 1183 (stating that "reliability is the linchpin in determining the admissibility of identification testimony" (quoting *Brathwaite*, 432 U.S. at 114)). The standard has thus evolved from admitting the identification only upon clear and convincing evidence to excluding the evidence only if there is a very substantial likelihood of misidentification. *See Perry v. New Hampshire*, 132 S. Ct. 716, 733 (2012) (noting that only "the most unreliable identifications . . . carrying a 'very substantial likelihood of . . . misidentification'" are to be excluded (second alteration in original) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)).

**¶8** In *Biggers*, the Supreme Court set forth factors for courts to consider as part of the totality of the circumstances when analyzing the reliability of an inherently suggestive identification:

---

[1] *Dessureault* and earlier cases use the term "unduly suggestive" rather than "inherently suggestive." An inherently suggestive identification procedure triggers the need for a reliability analysis to determine whether the identification is admissible. *See State v. Williams*, 144 Ariz. 433, 440–41, 698 P.2d 678, 685–86 (1985). For clarity and consistency throughout this opinion, we use only the term "inherently suggestive."

(1)     the witness's opportunity to view the suspect at the
        time of the crime;
(2)     the witness's degree of attention;
(3)     the accuracy of the witness's prior description of the
        suspect;
(4)     the witness's level of certainty at the initial viewing;
        and
(5)     the length of time between the crime and the witness's
        identification of the defendant.

409 U.S. at 199–200; *see also Lehr*, 201 Ariz. at 521 ¶ 48, 38 P.3d at 1184. These
factors are not exclusive, so a court may rely on other indicia of reliability
as well. *See State v. Fierro*, 166 Ariz. 539, 546–47, 804 P.2d 72, 79–80 (1990)
(relying in part on extensive cross-examination of identifying witness
instead of exclusively on enumerated *Biggers* factors).

**¶9**     Rojo-Valenzuela argues that the foregoing factors require
factual assessments and credibility determinations that must be made by
the trial judge, who has the opportunity to observe the identifying witness.
He asserts that if a trial judge erroneously fails to make reliability findings,
an appellate court may not then, as the panel did here, analyze the
reliability of the identification from the record.

**¶10**     But Rojo-Valenzuela misunderstands the trial judge's role in
determining the reliability, and hence the admissibility, of a suggestive
identification. Judging admissibility of identification evidence is a legal
determination, not a factual one. At the suppression hearing, the trial
judge's role is to evaluate the reliability of the suggestive identification, not
the credibility of the witness. In making the threshold determination of
admissibility, the judge acts as a gatekeeper to withhold identification
testimony from the jury only if there is a very substantial likelihood that the
witness has misidentified the defendant. The jury then acts as the ultimate
fact-finder.

**¶11**     The Supreme Court explained the roles of judge and jury in
the process this way: "Short of that point [at which a very substantial
likelihood of misidentification exists], such [identification] evidence is for

the jury to weigh. . . . Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Brathwaite*, 432 U.S. at 116; *see also State v. Nordstrom*, 200 Ariz. 229, 242 ¶ 27, 25 P.3d 717, 730 (2001) (noting that weaknesses in a witness's testimony go not to admissibility, but "to [the testimony's] weight and credibility, both matters for the jury to consider"), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239, 274 P.3d 509 (2012). The trial judge—or a reviewing court—must determine only whether the witness's identification testimony exhibits sufficient indicia of reliability under the totality of the circumstances to make it admissible. *Simmons*, 390 U.S. at 384. A trial judge's gatekeeping role is not intended to displace the jury's fact-finding role, which includes assessing the weight and credibility of testimony and resolving any evidentiary conflicts. Once the identification is deemed admissible, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) (addressing the respective roles of judge and jury in the expert testimony context). Thus, as occurred in this case, the trial is the place for the defense to question weaknesses in the officer's testimony and challenge his opportunity and ability to observe the defendant before making an identification.

¶12 Rojo-Valenzuela concedes that both this Court and the United States Supreme Court have conducted independent reliability analyses in the first instance. *See, e.g.*, *Brathwaite*, 432 U.S. at 114–16; *Biggers*, 409 U.S. at 199–201; *Foster v. California*, 394 U.S. 440, 442–43 (1969); *Simmons*, 390 U.S. at 385–86; *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987); *see also State v. Cañez*, 202 Ariz. 133, 150 ¶ 48, 42 P.3d 564, 581 (2002); *Lehr*, 201 Ariz. at 521 ¶¶ 49–51, 38 P.3d at 1184; *State v. Tresize*, 127 Ariz. 571, 574–75, 623 P.2d 1, 4–5 (1980); *Dessureault*, 104 Ariz. at 384–85, 453 P.2d at 955–56. He asserts, however, that in those cases, the defendants raised the suggestive identification issue for the first time on appeal, thereby waiving the right to have the issue decided by a trial court.

¶13 Rojo-Valenzuela concedes, however, that in *Williams*, this

Court appears to have made a reliability determination in the first instance after the trial court denied a challenge to a pretrial identification without making reliability findings. *See* 144 Ariz. at 440–41, 698 P.2d at 685–86. He argues, though, that *Williams* is an anomaly that we should not follow. We disagree because Rojo-Valenzuela's argument is based on the mistaken premise that reliability determinations require witness credibility findings. In this case, as in *Williams*, the trial court held a suppression hearing at which the facts surrounding the pretrial identification were fleshed out, providing the appellate court with a sufficiently developed record to permit it to make the reliability determination.

**¶14**         *Dessureault* itself supports our conclusion that an appellate court may make a reliability determination in the first instance. *See* 104 Ariz. at 383–84, 453 P.2d at 954–55 (noting that if an identification is challenged at trial, an appellate court may affirm a conviction "if it can be determined from the record on clear and convincing evidence that the in-court identification was [reliable]"). Here, after evaluating Wolfe's testimony at the suppression hearing under the totality of the circumstances, the court of appeals found that Wolfe's identification of Rojo-Valenzuela was reliable and therefore admissible. We agree that it had before it a record sufficient to allow it to make that determination.

**¶15**         We emphasize that it is highly preferable for the trial court to make reliability findings before permitting the jury to hear identification testimony. An appellate court, however, may evaluate the identification's reliability if the record is sufficiently developed. Because the trial court in this case held a *Dessureault* hearing, the court of appeals had a sufficient record from which to analyze the reliability of Wolfe's identification of Rojo-Valenzuela. We therefore hold that the court of appeals did not err in conducting a reliability analysis of Wolfe's identification in the first instance on appeal.[2]

---

[2]         The court of appeals "reinforce[d]" its conclusion with evidence that the jury was shown dash-camera video footage of the suspect jumping over the wall and instructed on the reliability of in-court identifications. *Rojo-Valenzuela*, 235 Ariz. at 622 ¶ 16, 334 P.3d at 1281. We reiterate that review of a ruling on a motion to suppress is limited to the evidence presented at

### III.  CONCLUSION

**¶16**          We affirm the opinion of the court of appeals and Rojo-Valenzuela's convictions and sentences.

---

the suppression hearing.  *See State v. Moore*, 222 Ariz. 1, 7 ¶ 17, 213 P.3d 150, 156 (2009).