NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KYLE LANCE MILLER, *Appellant.*

No. 1 CA-CR 19-0315
FILED 7-30-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-141688-001
The Honorable William Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Scott L. Boncoskey
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

**¶1**          Kyle Miller appeals his conviction and sentence for misconduct involving weapons. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**          In September 2017, officer Jeffrey Middleton stopped Miller for changing lanes without signaling, having an inadequate muffler, and driving with excessively high handlebars. Detective Geoff Francetic arrived at the scene while Miller was still on his motorcycle, and his body camera captured his interactions with Miller. The officers received reports of "loud sounds" and "some type of banging" in the area at the time of the stop. The noises continued while Miller was still on his bike. Rather than a driver's license, Miller gave Middleton an identification card. So, the officer ordered Miller off the motorcycle. Middleton then told Miller he was going to conduct a pat-down for weapons.

**¶3**          During the pat-down, Middleton felt something in Miller's pocket. When asked what it was, Miller told the officer it was a paper towel. Middleton asked if he could remove it, and Miller said, "Go ahead." Middleton discovered a marijuana joint inside the paper towel and arrested Miller. Another officer who arrived at the scene following the initial stop searched Miller's backpack after the arrest. In the backpack, the officer found a loaded firearm.

**¶4**          Grand jurors indicted Miller for misconduct involving weapons ("Count One") and possession of marijuana ("Count Two"). The State designated Count Two as a misdemeanor, and the parties agreed to sever the counts, holding a jury trial for Count One, to be followed by a

---

[1]     We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

bench trial for Count Two. At no time did Miller move to suppress the evidence related to the marijuana or firearm.

¶5        Jurors found Miller guilty as charged on Count One, and the superior court found Miller guilty as charged on Count Two. The court suspended the imposition of Miller's sentence for both counts and placed him on two years' supervised probation. Miller appealed his conviction and sentence for Count One, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

¶6        Miller contends the officers' discovery of the firearm violated the Fourth Amendment of the United States Constitution because it was derivative of a pat-down unsupported by reasonable suspicion that he was armed and dangerous. *See State v. Primous*, 242 Ariz. 221, 223, ¶ 11 (2017) ("[T]he Fourth Amendment prohibits any search of an individual unless the police have a reasonable belief that crime is afoot and the individual is armed and dangerous."). Consequently, Miller asserts the court committed fundamental error by admitting his firearm in evidence at the trial. He argues that *State v. Newell*, 212 Ariz. 389, 398, ¶ 34 (2006), which held that an appellate court may review suppression arguments first raised on appeal for fundamental error, controls our review of this issue. *Accord State v. Canez*, 202 Ariz. 133, 151, ¶ 51 (2002) (reviewing suppression issue first raised on appeal for fundamental error), superseded by rule on other grounds as stated in *State v. Valenzuela*, 239 Ariz. 299, 303, ¶ 11, n.1 (2016). Further, he argues that our supreme court's subsequent decision in *State v. Bush*, 244 Ariz. 575, 588, ¶ 51 (2018), which held that a defendant forfeited the right to challenge the admissibility of a confession if it was not raised in the superior court, does not control our decision because it preceded *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018) (describing fundamental-error analysis), and is distinguishable from the facts here because "the rules upon which its holding was based" have since changed. Miller also argues the record is sufficiently developed to review his suppression argument for fundamental error. We disagree.

¶7        Generally, "[i]ssues concerning the suppression of evidence which were not raised in the trial court are waived on appeal." *State v. Tison*, 129 Ariz. 526, 535 (1981); *see also State v. West*, 176 Ariz. 432, 440 (1993) ("In fact-intensive inquiries on motions to suppress, th[is] court is not obliged to consider new theories . . . ."), *overruled in part on other grounds by State v. Rodriguez*, 192 Ariz. 58, 64, n.7 (1998). But our supreme court has stated that

we may "review a suppression argument that is raised for the first time on appeal for fundamental error." *Newell*, 212 Ariz. at 398, ¶ 34. In this case, however, a fundamental-error review is made impossible by Miller's failure to move for suppression below.

**¶8**        Before a finding of fundamental error can be made, it must be apparent that the superior court committed error in some aspect of the proceedings. *State v. Thomas*, 130 Ariz. 432, 436 (1981). "If it is determined that error occurred, the prejudicial nature of the unobjected-to error must [then] be evaluated in light of the entire record." *Id.* Enforcement of our waiver standards is especially appropriate in the context of a motion to suppress because, in such cases, our review for error is limited to the record presented at the hearing on that motion. *State v. Lietzau*, 248 Ariz. 576, 579, ¶ 8 (2020) ("[W]e consider only the evidence presented at the suppression hearing . . . ."); *State v. Peoples*, 240 Ariz. 244, 247, ¶ 7 (2016); *State v. Rojo-Valenzuela*, 237 Ariz. 448, 452, ¶ 15, n.2 (2015) ("We reiterate that review of a ruling on a motion to suppress is limited to the evidence presented at the suppression hearing."); *State v. Moore*, 222 Ariz. 1, 7, ¶ 17 (2009) ("A trial court ruling on a motion to suppress is reviewed based solely on the evidence presented at the suppression hearing."); *State v. Estrella*, 230 Ariz. 401, 404, ¶ 9, n.1 (App. 2012).

**¶9**        Likewise, we will not speculate what evidence might have been presented at a hearing on a motion to suppress. *State v. Brita*, 158 Ariz. 121, 124 (1988) (refusing to address suppression ruling on an alternative basis not litigated in superior court because hearing "might well have taken a decidedly different twist"); *see also Estrella*, 230 Ariz. at 404, ¶ 9, n.1 (in the absence of suppression hearing ability to review issue is limited); *State v. Johnson*, 1 CA-CR 18-0735, 2020 WL 639192, at *4, ¶ 21 (Ariz. App. Feb. 11, 2020) (mem. decision); *State v. Smith*, 2 CA-CR 2016-0107, 2017 WL 1376354, at *3, ¶¶ 9–13 (Ariz. App. Apr. 17, 2017) (mem. decision). As noted by our supreme court:

> We disagree with the court of appeals' conclusion that an appellate court is freer to reverse on issues raised for the first time on appeal than it would be on issues presented and litigated in the trial court. It is particularly inappropriate to consider an issue for the first time on appeal where the issue is a fact-intensive one.

*Brita*, 158 Ariz. at 124.

**¶10**        Miller's reliance on *Newell* and *Canez* is misplaced. In both of those cases, the defendants moved to suppress evidence, and the superior court held a suppression hearing. *Newell*, 212 Ariz. at 398, ¶ 34; *Canez*, 202 Ariz. at 151, ¶ 53. In both cases, our supreme court found the record sufficiently developed to determine that no error had occurred in rejecting the fundamental-error claim. *Newell*, 212 Ariz. at 398, ¶¶ 33–35; *Canez*, 202 Ariz. at 150–52, ¶¶ 50–57; *see State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) ("burden of persuasion" shifts to a defendant in fundamental-error review to discourage him "from 'tak[ing] his chances on a favorable verdict, reserving the "hole card" of a later appeal on [a] matter that was curable at trial, and then seek[ing] appellate reversal.'" (alterations in original) (quoting *State v. Valdez*, 160 Ariz. 9, 13–14 (1989), *abrogated on other grounds by Krone v. Hotham*, 181 Ariz. 364, 366–67 (1995))); *cf. State v. Smith*, 114 Ariz. 415, 419 (1977) (trial court not required to determine the voluntariness of confession *sua sponte*).

**¶11**        Here, because Miller did not move to suppress the evidence, there is no suppression hearing, and the court made no findings of fact related to the pat-down and subsequent arrest; and very few facts on that point were adduced at trial. We are therefore left with little or no evidence about the officer's mental state for requesting a pat-down.[2] And we cannot say with any certainty what evidence might have been adduced at a hearing on a motion to suppress. Indeed, such a hearing might take "a decidedly different twist" from the trial testimony currently before us. *Brita,* 158 Ariz. at 124. To the extent we have the discretion to review a suppression issue in a case where there was not a suppression hearing, we decline to exercise that discretion here.

---

[2]        Although the officer was asked at the bench trial, "Why did you do the pat-down?" and the State produced body-camera footage, the State was not addressing a suppression issue. Because Miller did not move to suppress the evidence, the State did not have an opportunity to elicit answers to meaningful follow-up questions. Likewise, the video footage did not capture the mental state of the officer and therefore does not allow us to review the reasonableness of his beliefs regarding whether Miller was armed and dangerous.

## CONCLUSION

¶12    We affirm Miller's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:    AA