NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TERRENCE RANDLES, *Appellant.*

No. 1 CA-CR 20-0492
FILED 7-19-2022

Appeal from the Superior Court in Maricopa County
No. CR2017-002819-001
The Honorable Roy C. Whitehead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Dawnese Hustad
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann joined.

_____

**C R U Z**, Judge:

**¶1**　　　　Terrence Randles appeals his convictions and sentences for unlawful discharge of a firearm and refusing to provide his name when detained by police.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**　　　　At around 1:00 a.m. one morning in 2017, A.P. was driving northbound on 27th Avenue in Phoenix, in the lane closest to the sidewalk at about 45 miles per hour, when he passed Randles and a woman walking southbound on the sidewalk near Campbell Avenue.  As he passed the two, A.P. saw Randles firing into traffic.  Randles was within five feet of A.P.'s passenger door when he fired the shots, and the area was well-lit.  After passing them, in his rear-view mirror A.P. saw Randles and the woman walk through a dirt lot towards 1-17.  Approximately thirty seconds later, A.P. pulled over at a convenience store and called 911.  A.P. told the 911 operator that the shooter was a black male "probably" in his twenties, of average height and weight, wearing shorts and carrying a shirt.  He later told police that Randles' shorts were black.

**¶3**　　　　A few minutes after the 911 call, a police helicopter responded to the area where the shots were fired.  About three minutes later, Officer Bolin, the tactical flight officer, observed Randles and the woman walking southbound on 27th Avenue and directed ground units to intercept the two.  Officers told A.P. that they had "somebody in custody" and asked him if he was "willing to go identify the person, or to see if [he] could identify the person."  A.P. agreed to do so.  Police took A.P. to the location where Randles and the woman were detained.  When he saw the two, A.P. told police "Absolutely, without a doubt, that's the guy that was shooting the gun.  And that's the female that was with him," and "that absolutely is him.  I saw him crank off at least eight rounds."  A.P. was less than fifty feet away from Randles when he made the identification.

¶4        After the identification, officers arrested Randles, who gave them several false names.   Randles was ultimately identified by his fingerprints.   Police found five bullet casings in the area, and a swab of Randles' hands was positive for gunshot residue.

¶5        A grand jury indicted Randles for one count of unlawful discharge of a firearm, a class 6 felony (count 1), one count of misconduct involving weapons, a class 4 felony (count 2) and one count of refusing to provide his name when lawfully detained, a class 2 misdemeanor (count 3). The superior court granted Randles' motion to sever count 2 and later granted the State's motion to dismiss count 2 without prejudice.

¶6        At Randles' trial about two and one-half years after the 2017 shooting incident, A.P. was unable to identify Randles in court.   A police officer made the in-court identification.   Randles did not move to suppress A.P.'s pretrial identification, nor did the superior court sua sponte hold a pretrial hearing on its admissibility.   Defense counsel cross-examined A.P. extensively about his identification and argued in closing that A.P. had mistakenly identified Randles as the shooter.

¶7        A jury convicted Randles of counts 1 and 3.   The superior court sentenced him to 3.75 years in prison for count 1 and to a concurrent 4-month jail sentence for count 3.   The court also sentenced Randles to a concurrent term of 14 years in prison for a drug conviction in another matter not at issue in this appeal.

¶8        Randles timely appealed, and his attorney filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967).   After reviewing the record, we ordered briefing pursuant to *Penson v. Ohio*, 488 U.S. 75 (1988) and *State v. Thompson*, 229 Ariz. 43 (App. 2012), and asked Randles' counsel to file an opening brief addressing (1) whether the prior identification was impermissibly suggestive under *Neil v. Biggers*, 409 U.S. 188 (1972), and (2) if the superior court erred by admitting the prior identification in the absence of an objection, whether the error was fundamental error.

¶9        Counsel did so, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, -4033(A).

## DISCUSSION

¶10        Due process requires pretrial identifications to be conducted in a manner that secures a defendant's right to a fair trial. *State v. Smith*, 250 Ariz. 69, 84, ¶ 48 (2020).   Randles argues that A.P.'s pretrial identification

was both inherently suggestive and unreliable. Because Randles failed to object to the admission of the pretrial identification, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018).

**¶11** Randles was the only suspect shown to A.P. One-man show-ups are inherently suggestive. *State v. Williams*, 144 Ariz. 433, 439 (1985). However, "[a]n identification infected by improper police influence . . . is not automatically excluded." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). "[T]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Williams*, 144 Ariz. at 439 (citations and internal quotation marks omitted). Evidence should be excluded "only if there is a very substantial likelihood of misidentification." *State v. Rojo-Valenzuela*, 237 Ariz. 448, 450, ¶ 7 (2015). An unnecessarily suggestive identification procedure is admissible if it is reliable under the "totality of the circumstances." *Biggers*, 409 U.S. at 199.

**¶12** In *Biggers*, the United States Supreme Court set forth five non-exclusive factors for courts to consider when determining the reliability of an inherently suggestive identification:

> (1) The witness' opportunity to view the suspect at the time of the crime;

> (2) the witness' degree of attention;

> (3) the accuracy of the witness' prior description of the suspect;

> (4) the witness' level of certainty at the initial viewing; and

> (5) the length of time between the crime and the witness' identification of the defendant.

409 U.S. at 199-200; *State v. Goudeau*, 239 Ariz. 421, 455, ¶ 132 (2016) (citing *Biggers*). Appellate courts may determine the reliability of a suggestive identification in the first instance, if the "record permits an informed analysis." *Rojo-Valenzuela*, 237 Ariz. at 449, ¶ 1.

**¶13** The superior court is not required to sua sponte rule on issues not raised by the parties. *State v. Cannon*, 148 Ariz. 72, 76 (1985). *Cf. State v. Dessureault*, 104 Ariz. 380, 384 (1969) (when a defendant fails to challenge a pretrial identification at trial, we will presume "thereafter that prior identification procedures did not taint the in-court identification. . . .

Matters which could have been determined by the mere asking, if not raised, will be deemed settled adversely to the accused.").

¶14 Even if the superior court had a duty to sua sponte review the admissibility of the pretrial identification, we find no error, fundamental or otherwise. First, "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive *and* unnecessary." *Perry*, 565 U.S. at 238-39 (emphasis added); Wayne R. LaFave et al., 2 *Criminal Procedure* § 7.4(b) (4th ed. 2021) (the "unnecessary" inquiry concerns "whether there was some good reason for the failure to resort to less suggestive procedures.").

¶15 Here, the record showed that at the time of A.P.'s identification, police were in the middle of an active search for a shooter who had fired directly into traffic. "Identification procedures commenced soon after a crime can be beneficial in at least three ways: identification accuracy is fostered because an image of the culprit is still fresh in the victim's mind; innocent persons can be released immediately; and the police can be immediately freed to resume their search for the suspect while the trail is still fresh." *State v. Perkins*, 141 Ariz. 278, 289 (1984), *overruled on other grounds by State v. Noble*, 152 Ariz. 284 (1987).

¶16 Second, even if the identification was unnecessary, it was sufficiently reliable to be admissible under a totality of the circumstances. *See Biggers*, 409 U.S. at 199-200. The first factor we consider is A.P.'s opportunity to view Randles. *Id.* A.P. was driving in the lane closest to the sidewalk Randles was walking on, and he saw Randles both as he was driving towards Randles and after passing Randles, and although it was around 1:00 a.m. the street was well-lit. A.P.'s vehicle headlights were on and he did not have tinted windows. The record indicates that A.P. was driving at about 45 miles per hour at the time he saw Randles.

¶17 The next factor is A.P.'s degree of attention. *Id.* Although A.P. likely saw Randles only for a short time, his degree of attention on him was high, because he heard gunshots and saw Randles firing into traffic.

¶18 The next factor is the accuracy of A.P.'s description of Randles. *Id.* This factor weighs against admissibility. A.P.'s description of Randles was not particularly detailed, and not entirely accurate given the height and age discrepancy (Randles is 6' 2" and was 36 years old in 2017, and A.P. told police he thought Randles was of average height and "probably" in his twenties). *But see State v. Fierro*, 166 Ariz. 539, 546 (1990)

(witness' description of the defendant was sufficient because it was substantially correct although not entirely accurate).

**¶19**      The next factor, A.P.'s level of certainty at the initial viewing, supports admissibility. A.P. was "absolutely" certain that Randles was the man he saw shooting into traffic, and certain that the detained woman was the woman he saw walking with Randles. *See State v. Alvarez*, 145 Ariz. 370, 372 (1985) (witness' level of certainty favored admission because the witness responded immediately and without hesitation). Although Randles criticizes the certainty factor as empirically unreliable, Arizona courts have consistently considered this factor. *See Smith*, 250 Ariz. at 86, ¶ 60 (collecting cases).

**¶20**      Finally, the last factor, the length of time between the crime and the identification also supports admissibility. A.P. identified Randles less than a half hour after observing him shooting into traffic. *See id.* at ¶ 61 (finding reliability when the witness identified the defendant the day after seeing him).

**¶21**      Given the totality of the circumstances, we cannot say that A.P.'s identification was so unreliable that it "carr[ied] a very substantial likelihood of . . . misidentification." *Rojo-Valenzuela*, 237 Ariz. at 450, ¶ 7 (citation and internal quotation marks omitted). The accuracy of A.P.'s identification was a question for the jury. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) ("Short of that point [at which a very substantial likelihood of misidentification exists], such [identification] evidence is for the jury to weigh. . . . Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

**¶22**      As noted above, defense counsel cross-examined A.P. extensively about his identification, and argued in closing that A.P. had mistakenly identified Randles as the shooter. The court gave the jurors the standard criminal recommended jury instruction on identification. *See* Rev. Ariz. Jury Instr. Stand. Crim. 45 (4th ed.). Further, the jury was instructed on the State's burden of proof and on the credibility of witnesses as follows:

> In determining the evidence, you must decide whether or not to believe the witnesses and their testimony. As you do this, you should consider the testimony in light of all the other evidence in the case. This means you may consider such things as the witness' ability and opportunity to observe, their manner and memory while testifying, any motive or

prejudice they might have, and any inconsistent statements they may have made.

*See Rojo-Valenzuela*, 237 Ariz. at 451, ¶ 11 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The superior court did not err in failing to suppress Randles' identification.

**CONCLUSION**

¶23  For the foregoing reasons, we affirm.

